*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

PSG OF SARASOTA, LLC,               \*
a/k/a IV SOLUTIONS RX

                            \*

    *Plaintiff*

                            \*      **Civil Action No.** <u>1:26-cv-1937-RDB</u>

**v.**

                            \*

**VALERIE CAMPBELL**

                            \*

    *Defendant*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR**
**<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Defendant Valerie Campbell (Ms. Campbell") through counsel files this memorandum in support of her opposition to Plaintiff's motion for temporary restraining order and preliminary injunction.

**<u>SUMMARY OF ARGUMENT</u>**

Plaintiff claims that Ms. Campbell's discussion of patient medical records with that patient's treating physician constitutes "misappropriation" of Plaintiff's "trade secrets." Plaintiff further claims Ms. Campbell's decision to take a new job with that same treating physician qualifies as a breach of fiduciary duty and amounts to unfair competition. As consequence, Plaintiff asks that Ms. Campbell be precluded from working for that treating physician, or indeed, any healthcare provider that has a business relationship with Plaintiff.

Plaintiff is not entitled to a temporary restraining order, a preliminary injunction, or, indeed, *any* relief whatsoever. Plaintiff's papers – a thinly-disguised attempt to enforce an illegal noncompete – fail to allege Ms. Campbell

engaged in misconduct; fails to allege Plaintiff has suffered any harm; excessively punishes Ms. Campbell without conferring any meaningful benefit onto Plaintiff; and flies in the face of Maryland public policy. Plaintiff's motion must be denied.

**STATEMENT OF FACTS**

Plaintiff, PSG of Sarasota, LLC ("IV Solutions") is in the business of providing in-home "infusion therapy" services to patients. Compl. at ¶ 10. IV Solutions' patients are predominately referred to it by healthcare providers. *Id.* at ¶ 12. IV Solutions' referral sources prioritize "trust, continuity of care, reliability, and proven clinical performance." *Id.* It is not uncommon for patients referred to IV Solutions to receive services from it for many years. *Id.* at ¶ 15. The individuals who actually perform the infusion therapy services are healthcare professionals such as Ms. Campbell, who is herself a licensed registered nurse. *Id.* at ¶¶ 4, 14; Affidavit of Valerie Campbell (hereinafter "**Exhibit 1**").

IV Solutions gathers patient-specific information including patients' demographics, contact information, allergy and medical information, physician notes, and other patient care records. Compl. at ¶ 20. IV Solutions deems this information confidential and limits access to it. *Id.* at ¶ 21. Employees like Ms. Campbell rely upon these records to facilitate treatment. *Id.* at ¶ 25. IV Solutions requires its employees, including healthcare professionals like Ms. Campbell, to review and acknowledge a collection of documents ostensibly to protect patient confidentiality and maintain the security of its so-called proprietary interests. IV Solutions' employees are prohibited from "participat[ing] in any activity that is in direct competition to the pharmacy or accept financial gain through that

activity." Compl. Ex. B. Employees are further required to pledge they would "not discuss patient cases outside the pharmacy or with anyone not employed by the pharmacy unless they are directly involved with the patient's case." Compl. Ex. C. Employees are also expected to adhere to a number of additional internal policies related to maintaining confidentiality of records, avoiding conflicts of interest, and preventing unfair competition. Compl. Exs. B-G.

On or about April 26, 2026, Ms. Campbell submitted a three-week notice of resignation to Plaintiff's COO. *Id.* at ¶ 26; Ex. 1. The notice included a list of patients serviced by Ms. Campbell who would require Plaintiff to designate a new nurse to take over care. Compl. at ¶ 27; Ex. 1. Ms. Campbell also provided a list of patients who, for continuity of care purposes, would need to be discharged by IV Solutions so that they could continue to receive care from Ivonne Herrera, MD ("Dr. Herrera") a physician at Ms. Campbell's new employer TidalHealth. Compl. at ¶ 27, 31-32; Ex. 1. Dr. Herrera is the listed patients' referring physician. *Id.* Ms. Campbell had worked for Dr. Herrera prior to joining IV Solutions and, from January 2024 to January 31, 2026, was dually employed by IV Solutions and Dr. Herrera. Ex. 1.

As of May 18, 2026, Ms. Campbell is now employed by TidalHealth. Ex. 1. According to Plaintiff, one patient previously serviced by her while she worked for IV Solutions, now receives treatment at TidalHealth. Compl. at ¶ 61. Plaintiff also accuses Ms. Campbell of encouraging patients to discontinue treatment with IV Solutions; misleading patients into believing that, after her departure, they could no longer receive treatment from IV Solutions, and for stealing IV

3

Solutions' equipment and supplies. Compl. at ¶¶62. Ms. Campbell denies these accusations. Ex. 1.

## STANDARD OF REVIEW

The standard for a temporary restraining order is the same as a preliminary injunction. *See e.g., Muhammed v. Bernstein*, 2013 WL 3177864, at *2 (D. Md. Jun. 21, 2013) (J. Bennett presiding). A preliminary injunction is an "extraordinary remedy" that is never awarded as a matter of right. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Frazier v. Prince George's Cnty., Md.*, 86 F.4th 537, 543 (4th Cir. 2023). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits; that [it] is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Id.* A preliminary injunction may only be granted if the plaintiff satisfies all four factors. *Frazier* at 544 (citing *Winter*). By contrast, the district court may deny a preliminary injunction by rejecting only one factor. *Id.*

## ARGUMENT

### I. PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ANY OF ITS CLAIMS.

Plaintiff has brought four claims against Defendant: two statutory trade secret claims and two common law business tort claims. Plaintiff cannot succeed on any of them.

Although an employee owes their employer a general duty of loyalty, that duty is not without limitations. Under Maryland law, "[t]he right to labor or to use one's skills, talents, or experience for one's own benefit, or furnish them to

4

another for compensation, is a natural and inherent right of the individual." *Ruhl v. F.A. Bartlett Tree Expert Co.*, 245 Md. 118, 126, 225 A.2d 288, 293 (1967). Maryland courts further recognize "that every person has […] the right to ameliorate his socio-economic status by exercising a maximum degree of personal freedom in choosing employment." *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 39, 382 A.2d 564, 568-69 (1978). The act of seeking and making arrangements for new employment does not constitute a breach of loyalty, even while still with the former employer. *Id.*; *C-E-I-R, Inc. v. Computer Dynamics Corp.*, 229 Md. 357, 366 183 A.2d 374, 379 (1962); *Optic Graphics, Inc. v. Agee*, 87 Md. App. 770, 781, 591 A.2d 578, 584 (1991). To be actionable, the employee must engage in some other independently wrongful conduct, such as the misuse of trade secrets. *C-E-I-R, Inc.* at 379-80.

To establish a claim for misuse of trade secrets under the DTSA and MUTSA, the plaintiff must establish: 1) ownership of a trade secret subject to reasonable measures of secrecy, and 2) misappropriation by improper means. *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC,* 598 F. Supp. 3d 348, 356 (D. Md., 2022) (discussing the DTSA); *AirFacts, Inc. v. Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (discussing the MUTSA). The DTSA imposes an additional requirement that the trade secret must implicate interstate commerce. *Blades of Green, Inc.*, at 356. Both statutes define a trade secret similarly as information its owner: 1) derives independent economic value from not being generally known or ascertainable by proper means by other persons, and 2) has taken reasonable efforts to maintain its secrecy. 18 U.S.C.A. § 1839(3); Md. Code Ann., Com. Law

5

§ 11-1201(e). Setting aside the fact Ms. Campbell unequivocally denies engaging in the misconduct of which she is accused, even if this Court were to accept Plaintiff's accusations as true, Plaintiff has failed to identify any information that, under the circumstances, was secret or misappropriated by Ms. Campbell.

In a nutshell: Plaintiff, whose business derives from patient referrals from outside healthcare providers (Compl. at ¶ 12), accuses Ms. Campbell of disclosing patient medical records to the patients' referring physician. (*Id.* at ¶ 27, 31-32). Plaintiff then accuses Ms. Campbell of leaving her employment with IV Solutions to work for that referring physician directly. *Id.* Under these circumstances, it is not clear how Plaintiff could possibly prove that this information was not already known to or ascertainable by the involved parties. By extension, it is not possible for Plaintiff to prove that Ms. Campbell's alleged disclosure of that information *to the patients' treating physician* constitutes a misuse of that information. Simply put: the discussion of a patient's medical history to ensure continuity of care among *practitioners within the patient's chain of care*, is not a "misappropriation" of a "trade secret" owned by Plaintiff. For the same reasons, these circumstances neither evidence a breach of fiduciary duty[1], nor have they caused Plaintiff to experience any unfair competition.

Furthermore, for reasons discussed more fully *infra*, the agreements, policies, and company guidelines Plaintiff relies upon to undergird its business tort claims amount to a *de facto* noncompete agreement, unenforceable as

---

[1] Indeed, it would be malpractice for Ms. Campbell to keep her patients' treating physician in the dark simply to appease her employer's jealousy.

against Maryland public policy. Md. Code Ann., Lab. & Empl. § 3-716(a)(3). Plaintiff cannot allege Ms. Campbell engaged in misconduct based on terms of employment that Maryland law makes illegal. Plaintiff will not prevail on the merits.

## II.    PLAINTIFF HAS NOT – AND WILL NOT – SUFFER ANY IRREPARABLE HARM BECAUSE OF DEFENDANT'S ALLEGED CONDUCT.

Plaintiff's claim that it will suffer a vast exodus of patients because of Ms. Campbell's alleged misconduct has utterly failed to materialize. Of the nearly 100 patients Ms. Campbell listed in her resignation letter, Plaintiff has identified only *one* (1) that has discontinued their service with IV Solutions. Compl. ¶ 61. Plaintiff has offered no facts establishing this patient's decision was motivated in any way by Ms. Campbell's alleged conduct. *See id.* If Plaintiff's wild and unfounded speculation that Ms. Campbell used patient medical records as leverage in a bid for employment at TidalHealth is true, TidalHealth must be sorely disappointed. *See* Compl. ¶¶ 34-35.

Furthermore, even if Plaintiff's "doomsday scenario" – wherein 80-plus patients follow Ms. Campbell to Dr. Herrera – had actually come to pass, that scenario is simply one in which one of Plaintiff's referral sources begins to perform the same services as IV Solutions "in-house." Why this should be attributed to Ms. Campbell instead of natural market forces, Plaintiff does not explain. If Plaintiff's referral sources are deciding to cut out the middle man, it is through no fault of Ms. Campbell. Plaintiff should not be awarded the "extraordinary" and "drastic" relief of a preliminary injunction based on alleged harms that are so obviously speculative and contrived.

7

### III.    THE BALANCE OF THE EQUITIES TIPS IN FAVOR OF DEFENDANT.

In contrast to the vaguely imagined harm the Plaintiff claims it will suffer absent interlocutory relief, Ms. Campbell will suffer real, substantial, and far greater harm if the Court grants Plaintiff's motion.

Plaintiff seeks a restraining order which would *inter alia* prohibit Ms. Campbell from making contact with any of IV Solutions' current, former, and future clients – whether she had any prior contact with them or not – as well as their families, and, critically, their treating physicians. Since Ms. Campbell is currently employed by one such treating physician, a restraining order and preliminary injunction would preclude Defendant from continuing her employment. Furthermore, given the parties' geographic location, any physician engaged in a similar practice is almost certainly a referral source for IV Solutions and would, therefore, be covered by such an order. The balance of the equities clearly tips in Defendant's favor.

### IV.    GRANTING PLAINTIFF'S MOTION IS CONTRARY TO THE PUBLIC INTEREST.

Under Maryland law, "[t]he right to labor or to use one's skills, talents, or experience for one's own benefit, or furnish them to another for compensation, is a natural and inherent right of the individual." *Ruhl*, 225 A.2d at 293. A restrictive covenant will only be enforced if it meets four requirements: 1) the employer has a legally protected interest, 2) the covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest, 3) the covenant cannot impose an undue hardship on the employee, and 4) the covenant cannot violate public policy. *Seneca One Finance, Inc. v. Bloshuk*, 214

8

F. Supp. 3d 457, 461 (D. Md. 2016); *Medispec, Ltd. V. Chouinard*, 133 F. Supp. 3d 771, 773-74 (D. Md. 2015). For all the reasons discussed *supra*, Plaintiff cannot satisfy the first three factors, but the final nail in the coffin is that Plaintiff's requested relief makes a mockery of Maryland public policy.

Maryland law heavily restricts the enforceability of anticompetitive agreements against healthcare professionals. Md. Code Ann., Lab. & Empl. § 3-716(a)(3) expressly provides:

> A noncompete or conflict of interest provision in an employment contract or a similar document or agreement that restricts the ability of an employee to enter into employment with a new employer or to become self-employed in the same or similar business or trade shall be null and void as being against the public policy of the State.

The suite of documents Plaintiff relies upon to show Ms. Campbell's breach of fiduciary duty and unfair competition – including one which explicitly prohibits her from working for a competitor – are clearly unenforceable under Maryland law and Plaintiff cannot revive them through the claims it brings now. Furthermore, Plaintiff's request for relief does not merely impose a burden on Ms. Campbell. It is axiomatic that every person has the right to make informed decisions about his or her own healthcare, including the right to choose their doctor. *See, e.g.*, Md. Code Ann., Health–Gen. § 19-343; *Stouffer v. Reid*, 413 Md. 491, 993 A.2d 104 (2010). Injunctive relief for Plaintiff would trample on the rights of her patients – some of whom she has known and treated for years. It cannot be allowed to pass.

## CONCLUSION

Plaintiff's request for preliminary relief should be an exercise in futility. Plaintiff cannot prevail on its claims because it has identified no actionable misconduct committed by Defendant; it has neither suffered nor is in danger of suffering any measurable harm; and its requested relief would excessively burden Defendant and violate public policy. For the reasons stated above, Plaintiff's motion for temporary restraining order and preliminary injunction should be denied.

> */s/ Robin R. Cockey*
> ROBIN R. COCKEY, (No. 02657)
> RICHARD M. KIDNEY, (No. 31600)
> Cockey, Brennan & Maloney, PC
> 313 Lemmon Hill Lane
> Salisbury, MD 21801
> 410-546-1750
> Fax: 410-546-1811
> rrcesq@cbmlawfirm.com
> kidney@cbmlawfirm.com
> *Counsel for Defendant*

10